UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CHARLES E. MCDONALD,

Plaintiff,

v.

WARDEN BRIAN WILLIAMS[1], *et al.*,

Defendants.

Case No. 2:19-00261-CDS-DJA

ORDER

Petitioner Charles E. McDonald filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 14 ("Petition")). This matter is before the Court for adjudication on the merits of the remaining grounds in the Petition. For reasons discussed below, the Court denies the Petition and denies McDonald a certificate of appealability.

**I.     BACKGROUND**

On September 1, 2010, Deborah Lee ("Lee") withdrew $600 from her bank account and went to another store called Plus Mail to purchase a money order in the amount of $415. ECF No. 16-1 at 69-71. Lee put the money order and remaining cash in her wallet. *Id*. at 73. On the same day after purchasing the money order, Lee went to a nearby clothing store. *Id*. at 74. While at the clothing store, Lee stood looking at blouses at a rack and had her purse over her arm. *Id*. Lee testified at trial that a tall black man approached her and asked whether a size large blouse was within her reach. *Id*. As Lee reached towards the blouse on the rack, the man reached into her purse, grabbed Lee's wallet, and ran out of the store. *Id*. at 75. Lee's wallet was pink with a playboy bunny symbol. *Id*. at 72. Surveillance video depicted the man that approached Lee

---

[1] It appears from the state corrections department's inmate locator page that Petitioner is incarcerated at the Southern Desert Correctional Center ("SDCC"). *See* https://ofdsearch.doc.nv.gov/form.php (retrieved May 2022 under identification number 96753). The department's website reflects that William Hutchings is the warden of that facility. *See* https://doc.nv.gov/Facilities/SDCC_Facility/ (retrieved May 2022). At the end of this order, the Court directs the Clerk of the Court to substitute Petitioner's current immediate physical custodian, William Hutchings, as Respondent for the prior Respondent Brian Williams, pursuant to, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

running from the store with the same wallet. *Id.* at 87. Lee spoke to police officers and air units were dispatched. *Id.* at 79.

Ivra Baldwin ("Baldwin") testified at trial that McDonald came to Baldwin's apartment on September 1, 2010. ECF No. 16-1 at 117. McDonald asked Baldwin to cash a $415 money order and in exchange McDonald would give Baldwin $50. *Id.* at 119-121. After cashing the money order at Moneytree, Baldwin gave the money to McDonald. *Id.* The State presented still images from surveillance video and Baldwin identified McDonald as the person in the images. *Id.* at 124. Samuel Wright ("Wright") testified at trial that upon questioning from police officers, he identified McDonald as the individual in the surveillance video. ECF No. 16-1 at 167-169. At trial, Wright identified McDonald in a still image from the surveillance video based on his body type. *Id.* at 170.

Following trial, the jury returned a verdict finding McDonald guilty of larceny from a person, victim 60 years of age or older and possession of stolen property. ECF No. 16-7. In January 2012, the Eighth Judicial District Court ("state court") entered the judgment of conviction and sentenced McDonald under the small habitual criminal statute to a term of 8 to 20 years. *Id.* McDonald appealed, and the Nevada Supreme Court affirmed the conviction. ECF Nos. 16-8, 16-18.

In February 2013, McDonald filed a state petition for writ of habeas corpus. ECF No. 16-23. The state court denied the petition and McDonald appealed. ECF Nos. 16-25, 16-30. The Nevada Supreme Court found that the state court's failure to appoint post-conviction counsel prevented meaningful litigation of the petition and reversed and remanded for appointment of counsel. ECF No. 17-4. McDonald filed a supplemental petition and following oral argument, the state court denied the petition. ECF Nos. 17-13, 17-17. On appeal, the Nevada Court of Appeals affirmed in part and reversed in part, remanding the case for a second time for an evidentiary hearing. ECF No. 17-27. Upon remand and following an evidentiary hearing, the state court denied the petition. ECF Nos. 18-1, 18-2. The Nevada Court of Appeals affirmed. ECF No. 18-12.

In February 2019, McDonald initiated the instant federal habeas corpus proceeding. ECF No. 1. The Court appointed counsel and McDonald filed an amended petition. ECF Nos. 8, 14.

Respondents moved to dismiss Ground 3 as unexhausted. ECF No. 23. The Court denied

Respondents' motion to dismiss and deferred ruling on the cause and prejudice argument and

merits analysis of Ground 3 until a determination on the merits. ECF No. 30.

II.    LEGAL STANDARD

    a.   **Review under the Antiterrorism and Effective Death Penalty Act**

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in *habeas corpus*

cases under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court precedent,

within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*,

538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v.

Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of

established Supreme Court precedent under § 2254(d)(1), "if the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies

that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The

'unreasonable application' clause requires the state court decision to be more than incorrect or

erroneous. The state court's application of clearly established law must be objectively

unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409-10).

    The Supreme Court has instructed that a "state court's determination that a claim lacks

merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the standard as "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

### b.  Standard for Evaluation of an Ineffective Assistance of Counsel Claim

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective assistance of counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts considering an ineffective assistance of counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court previously adjudicated the ineffective assistance of counsel claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

1
2

### III.    DISCUSSION

### a.    Grounds 1 and 2

In Ground 1, McDonald alleges that trial counsel rendered ineffective assistance for failing to investigate mental health issues and request a competency exam. ECF No. 14 at 7-11. McDonald argues that in March 2012, five months after the instant challenged conviction, McDonald's counsel, Dan Winder ("Winder"), in another state criminal case investigated his mental health issues, requested a competency hearing, and as a result, McDonald was found incompetent. *Id.* at 7-8. He asserts that he has a history of mental illness and has been diagnosed with mental illness since 2000, has been found incompetent numerous times, and was involuntarily committed to a psychiatric hospital in 2010. *Id.* at 9. He further asserts that when he first met with his trial counsel, he was being held in a unit specifically for those in need of mental health treatment and that he told his trial counsel that he had a history of mental illness, including PTSD, mood disorder, severe depression, and hearing voices. *Id.* at 9-10. In addition, McDonald's significant other, Mary Shelman ("Shelman"), told McDonald's counsel to have McDonald evaluated. *Id.*

In Ground 2, McDonald alleges that trial counsel rendered ineffective assistance for failing to investigate McDonald's mental health issues thereby depriving him of an insanity defense. ECF No. 14 at 11-14. A psychiatrist examined McDonald during post-conviction proceedings and found that McDonald "has a complex of psychiatric disorders well documented in his treatment record that support his chronic paranoia, exacerbated by drug use and noncompliance with medication treatment . . . had he been competent to form a defense, he might have . . . formulate[d] an insanity . . . defense." *Id.* at 12. McDonald asserts that he was incapable of developing the *mens rea* necessary due to his mental illness and delusions at the time of the charged crime. (*Id.* at 13.)

The Nevada Supreme Court held:

> The district court held an evidentiary hearing on this issue, and found counsel was not deficient. Specifically, the district court found McDonald failed to demonstrate counsel should have known McDonald was incompetent or should have done further investigation into McDonald's mental health issues. McDonald appeared to understand counsel during meetings, was able to discuss strategies, and gave appropriate responses to counsel's questions. Further, counsel testified McDonald understood the gravity of the situation, he understood the evidence against him,

1    and offered information to assist in his defense. The district court found McDonald
     acted and responded appropriately in court.

2
     The district court also found McDonald failed to demonstrate prejudice because
3    McDonald failed to demonstrate he was incompetent at the time of trial. The
     district court found the subsequent finding of incompetency did not demonstrate
4    he was incompetent during this trial. Further the doctor who examined him during
     the postconviction proceedings could not draw a conclusion "either way whether
5    [McDonald]was competent or not competent at the time of trial."

6    Substantial evidence supports the decision of the district court. McDonald failed
     to demonstrate counsel should have known he did not have sufficient ability to
7    consult with counsel with a reasonable degree of understanding or that he did not
     have a rational or factual understanding of the proceedings against him. Further
8    McDonald failed to demonstrate he was incompetent at the time of trial, or had
     counsel investigated his mental health, he would have been able to pursue an
9    insanity defense or a plea of guilty but mentally ill.

10   ECF No. 18-12 at 3-4. The Nevada Supreme Court's ruling was neither contrary to nor an

11   objectively unreasonable application of clearly established law as determined by the United

12   States Supreme Court.

13       Defense counsel has a "duty to make reasonable investigations or to make a reasonable

14   decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. In an

15   ineffectiveness of counsel case, "a particular decision not to investigate must be directly assessed

16   for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's

17   judgments." *Id.* In assessing counsel's investigation, the Court must conduct an objective review

18   of counsel's performance, measured for "reasonableness under prevailing professional norms." *Id.*

19   at 688. This includes a context-dependent consideration of the challenged conduct as seen "from

20   counsel's perspective at the time." *Id.* at 689. *See Wiggins v. Smith*, 539 U.S. 510, 523 (2003).

21   Furthermore, "strategic choices made after thorough investigation of law and facts relevant to

22   plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

                    i.   **Ineffective Assistance re: Competency**

24       The Nevada Supreme Court's determination that McDonald failed to demonstrate that

25   trial counsel was deficient for his failure to investigate McDonald's competency to stand trial

26   and request a competency evaluation was not unreasonable. Counsel's failure to move for a

27   competency hearing violates a petitioner's right to effective assistance of counsel when "there

28   are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the

defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011). At the evidentiary hearing, trial counsel testified that he had an impression that McDonald "was indulging in some potential self-medication using narcotic substances," based on McDonald's weight loss, but that he was able to discuss strategy with McDonald, that McDonald appeared to understand the information trial counsel was conveying to him, that McDonald realized the gravity of the situation he was facing, and that McDonald provided appropriate responses to questions posed. ECF No. 18-1 at 45-47. Although McDonald's significant other, Shelman, testified that she informed trial counsel of McDonald's mental health issues, trial counsel testified that he did not recall interacting with Shelman. *Id.* at 59-60, 84-88. Trial counsel further testified as follows:

> My general practice is if I have family members, friends, individuals saying, hey, Person X has some serious mental health issues that needs to be looked into, what I generally do is have my private investigator speak to that person, get a little more information. If it has teeth, I will then – what I've done many, many times is have the individual sign a release so I can go get mental health records . . . And if those records support what's going on – excuse me, what we've been told, proceed accordingly. I sometimes request for an evaluation, sometimes I ask them to go to competency court.

ECF No. 18-1 at 59.

In addition, trial counsel described McDonald as "very lucid before we were going to trial," that "[McDonald] knew exactly what he was up against," that they "had a very pointed conversation," but, "he had given me ostensible justifications for why he was doing what he was doing, primarily because he didn't want to get habitualized." *Id.* at 63. During the trial, McDonald was out of custody and employed. *Id.* at 44, 54-56. As stated by the Nevada Supreme Court, McDonald acted and responded appropriately in court. ECF No. 18-12 at 3. McDonald fails to overcome the strong presumption that his counsel's conduct "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. 689. The Nevada Supreme Court's was not objectively unreasonable in determining trial counsel was not deficient.

Further, the Nevada Supreme Court reasonably determined that McDonald failed to establish prejudice. McDonald failed to demonstrate a reasonable probability that he would

have been found incompetent to stand trial had the issue been raised. Although McDonald was found incompetent as a result of competency proceedings in a separate criminal state case for a four-month period from March 29, 2012 to August 7, 2012, such finding does not demonstrate that McDonald was incompetent during his three-day trial starting on October 11, 2011. ECF Nos. 15-21, 17-13 at 25-27. McDonald demonstrated a rational and factual understanding of the proceedings against him through trial as well as an ability to consult with his attorney. ECF No. 17-17 at 4. At the evidentiary hearing, Dr. Roitman testified as an expert witness on behalf of McDonald. (ECF No. 18-1 at 3.) Dr. Roitman examined McDonald during post-conviction proceedings and could not "draw a conclusion either way whether he was competent or not competent at the time of trial." *Id.* at 12. Accordingly, McDonald fails to demonstrate that he was prejudiced by trial counsel's failure to request competency proceedings. The Nevada Supreme Court's determination was not an unreasonable application of the prejudice prong of *Strickland.* McDonald is not entitled to habeas relief on Ground 1.

### ii.   Ineffective Assistance re: Insanity Defense

The Nevada Supreme Court's ruling that McDonald failed to demonstrate that had counsel investigated his mental health, he would have been able to pursue an insanity defense or a plea of guilty but mentally ill was not unreasonable. As stated previously, McDonald did not overcome the strong presumption that trial counsel's conduct "falls within the wide range of reasonable professional assistance" regarding trial counsel's decision not to investigate McDonald's mental health issues. *Strickland*, 466 U.S. 689. Further, McDonald failed to demonstrate that there is a reasonable probability that the outcome of trial would have been different had McDonald pursued an insanity defense.

Under Nevada law, criminal defendants are presumed to be legally sane, and, to prevail with an insanity defense, must overcome that presumption with a preponderance of the evidence. *See Williams v. State*, 885 P.2d 536, 538 (1994). Nevada recognizes the defense of legal insanity and applies the *M'Naghten* rule. *See, e.g., Miller v. State*, 911 P.2d 1183, 1185 (1996). Under the *M'Naghten* rule, the jury determines whether the defendant "knew the nature and quality of [his] acts, had the capacity to determine right from wrong or whether [he] was doing wrong when

1   [he] committed the crime." *See Clark v. State*, 588 P.2d 1027, 1029 (1979). "To qualify as being

2   legally insane, a defendant must be in a delusional state such that he cannot know or understand

3   the nature and capacity of his act, or his delusion must be such that he cannot appreciate the

4   wrongfulness of his act, that is, that the act is not authorized by law." *Finger v. State*, 27 P.3d 66,

5   84–85 (2001). "The fact that a person had mental health problems did not necessarily mean that

6   he or she could meet the *M'Naghten* test for insanity." *Id.* at 72.

7          The Nevada Supreme Court considered Dr. Roitman's evaluation that McDonald "has a

8   complex of psychiatric disorders well documented in his treatment record that support his

9   chronic paranoia, exacerbated by drug use and noncompliance with medication treatment."

10   (ECF No. 20-2 at 19.) Dr. Roitman's evaluation set forth McDonald's "mental deterioration

11   during the events that led to the instant offense" providing that McDonald "felt sexually

12   attracted" to Lee at the clothing store, noticed Lee's pink playboy bunny wallet in her purse, and

13   became "convinced that the eye of the bunny was a camera that the woman purposely

14   positioned to focus on [McDonald]," then McDonald heard his dead fiancé's voice telling him to

15   "take the wallet with the camera to [Baldwin] and tell him to get rid of it." *Id.* at 5.

16          The Nevada Supreme Court, however, also considered the evidence at trial wherein

17   McDonald deceived or distracted Lee during the commission of the crime by asking her to reach

18   for an item on the rack while he grabbed her wallet in her purse. ECF No. 16-1 at 73. The State

19   highlighted the flight instruction at closing and presented video evidence of McDonald running

20   after taking the wallet. *See* ECF No. 16-5 at 11. Additionally, evidence at trial demonstrated that

21   McDonald used a third-party individual to cash the money order. The State argued at closing

22   that McDonald had Baldwin cash the money order because police were looking for someone that

23   matched McDonald's description. *Id.* at 13. Such evidence does not support the contention that

24   McDonald did not know or understand the nature and capacity of his act, or that his delusion

25   was such that he did not appreciate the wrongfulness of his act. *See Finger*, 27 P.3d at 84.

26   Accordingly, the Nevada Supreme Court reasonably determined that McDonald failed to

27   demonstrate a reasonable probability that the presentation of an insanity defense would have

28   changed the outcome of the trial. McDonald is not entitled to habeas relief on Ground 2.

b. **Ground 3**

In Ground 3, McDonald alleges that trial counsel rendered ineffective assistance for failing to investigate or present any mitigation at McDonald's sentencing. ECF No. 14 at 15 -17. He asserts that because trial counsel failed to order McDonald's medical records, the state court was not aware of McDonald's diminished capacity at sentencing. *Id*. at 16. The Court held that Ground 3 is subject to dismissal as procedurally defaulted unless McDonald can show cause and prejudice under *Martinez*.[2] ECF No. 30. The Court, however, finds that Ground 3 is not substantial under *Martinez*. *See Martinez*, 566 U.S. at 14.

McDonald's argument that trial counsel did not present mitigation at sentencing related to McDonald's mental illness is belied by the record. At sentencing, trial counsel highlighted that McDonald "did lead a clean and straight and narrow life and then due to incidents outside of his control, for lack of a better term, the wheels came off and it led him down a spiral of self-medication regarding his mental health issues." ECF No. 16-6 at 8. Further, trial counsel noted that McDonald received mental health treatment and requested "a strict inpatient program" as a reasonable hope for success. *Id*. at 10. In addition, McDonald addressed the state court and referenced his mental health issues. *Id*. at 7. The presentence investigation report also reviewed McDonald's mental health history, which was provided to the sentencing court. ECF No. 20-5 at 4.

McDonald's argument that trial counsel would have explained to the state court that McDonald's crimes were a result of mental illness exacerbated by his drug addiction if trial counsel investigated McDonald's mental illness fails because trial counsel presented such mitigation argument at sentencing. McDonald faced adjudication as a "large" habitual criminal under Nev. Rev. Stat. § 207.010(1)(b), which has three possible sentences: life imprisonment

---

[2] To establish cause and prejudice for a trial-level ineffective assistance of counsel claim under *Martinez*, a petitioner must show that:

(1) Post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different, and (3) the underlying ineffective assistance of counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Ramirez v. Ryan*, 937 F.3d 1230, 1242 (9th Cir. 2019).

without the possibility of parole, life imprisonment with the possibility of parole after 10 years, and 25 years imprisonment with the possibility of parole after 10 years. In support of seeking sentencing under the large habitual statute, the State argued that McDonald had five prior felony convictions and that five of the convictions were committed while McDonald was on supervised release. ECF No. 16-6 at 5. The State further argued that McDonald violated parole when it was granted to him. *Id.* The state court, however, sentenced McDonald under the small habitual statute to a term of 8 to 20 years. ECF No. 16-7. The Court concludes that Ground 3 is not substantial under *Martinez*.

In addition, McDonald fails to demonstrate that post-conviction counsel performed deficiently or a reasonable probability that the result of the post-conviction proceedings would have been different had post-conviction counsel raised the claim. Trial counsel in fact presented mitigation argument related to McDonald's mental illness at sentencing. Post-conviction counsel, therefore, was not deficient for foregoing a claim that lacked merit. Had post-conviction counsel presented the claim that trial counsel was ineffective at sentencing, there is not a reasonable probability the result of the post-conviction proceedings would have been different because the state district court has broad discretion at sentencing. *See Randell v. State*, 846 P.2d 278, 280 (Nev. 1993). The State highlighted McDonald's multiple prior felonies that were committed while McDonald was on supervised release and that McDonald violated parole when it was granted to him at sentencing. Because trial counsel presented mitigation argument, given the broad discretion in sentencing enjoyed by the state courts in Nevada, and McDonald's criminal record, there isn't a reasonable probability that further mitigation argument regarding McDonald's mental illness would have changed the result of the post-conviction proceedings. Accordingly, the Court denied Ground 3 as procedurally defaulted.

### c.   Ground 4

In Ground 4, McDonald alleges that trial could rendered ineffective assistance for failure to show Exhibit 8, a still image of video footage of the crime scene, to McDonald before telling him to go to trial. ECF No. 14 at 17-18. He asserts that trial counsel advised McDonald to go to

1    trial because the jury would not be able to identify him, and trial counsel failed to inform

2    McDonald that video footage existed. *Id.* at 17. The Nevada Court of Appeals held:

3    > McDonald argues his counsel was ineffective for advising McDonald to reject a plea
     > offer and proceed to trial without showing McDonald the video footage of the
4    > crime scene. McDonald asserts counsel advised him the jury would not be able to
     > identify him as the perpetrator and that is why he decided to reject the plea offer.
5    > McDonald states he would have accepted a plea offer from the State had he viewed
     > the video footage ahead of trial. McDonald failed to demonstrate his counsel's
6    > performance was deficient or resulting prejudice.

7    > McDonald did not allege counsel misadvised him regarding the law pertaining to
     > his charges, *cf. Lafler v. Cooper*, 566 U.S.___, 132 S. Ct. 1376, 1384 (2012) (explaining
8    > that counsel's performance was objectively unreasonable due to informing the
     > petitioner of an incorrect legal rule). Moreover, during the preliminary
9    > examination the victim could only describe the physical characteristics of the
     > perpetrator of the crime and did not identify McDonald as the person who
10   > committed the crime, and accordingly, McDonald fails to demonstrate that
     > counsel's advice regarding use of an identity defense at trial was the performance
11   > of an objectively unreasonable counsel. In addition, McDonald did not
     > demonstrate a reasonable probability there was a plea offer from the State he
12   > would have accepted absent ineffective assistance of counsel, the State would not
     > have withdrawn it in light of intervening circumstances, and the district court
13   > would have accepted such an offer. *See id.* ___, 132 S. Ct. at 1385. Therefore, we
     > conclude the district court did not err in denying this claim.

14

15   ECF No. 17-27 at 3-4. The Nevada Court of Appeal's rejection of McDonald's ineffective assistance

16   claim was neither contrary to nor an objectively unreasonable application of *Strickland*.

17          McDonald argues that the state appellate court applied the wrong standard and

18   misinterpreted the expert's conclusions, and the Court should, therefore, review the claim *de*

19   *novo*. ECF No. 42 at 15. In *Lafler*, the allegation was that petitioner had rejected favorable plea

20   offers "after his attorney convinced him that the prosecution would be unable to establish his

21   intent to murder" because the victim "had been shot below the waist." *Lafler*, 566 U.S. at 161. The

22   Supreme Court confirmed that the *Strickland* test applies to the plea bargaining process when a

23   defendant rejects a plea offer and elects to go to trial. *Id.* at 163. Thus, other than stating that

24   counsel's advice was concededly deficient, the Supreme Court in *Lafler* did not provide any

25   standards under which lower courts are to evaluate the sufficiency of a trial counsel's

26   performance in rendering plea advice. *See id.* at 174 (stating that deficient performance had been

27   conceded by all parties, so there is no need to address what type of performance would be

28   required to find counsel to be constitutionally ineffective). The Nevada Court of Appeals, here,

analogized to *Lafler* noting that McDonald did not allege that trial counsel provided incorrect advice regarding the law, but nonetheless applied the *Strickland* standard.

The Court is not convinced that trial counsel's performance fell below the *Strickland* standard as applied in the plea bargaining context. In the plea advice context, "[c]ounsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision." *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002). Trial counsel testified at the evidentiary hearing that he showed McDonald the video footage and the still images from the video footage recounting that Exhibit 8 had a "crystal clear" image of McDonald's face with the wallet also in view. ECF No. 18-1 at 50-51. Trial counsel further testified that he did not advise McDonald to reject the plea and go to trial. *Id.* at 53.

The state appellate court's determination that McDonald failed to demonstrate prejudice was not unreasonable. As noted by the Nevada Court of Appeals, McDonald did not demonstrate a reasonable probability that if there was a plea offer from the State he would have accepted absent ineffective assistance of counsel. Trial counsel further testified that he made a "last-ditch effort" and discussed a potential plea deal with McDonald on the day of jury selection recounting his discussion with McDonald, "[f]irst I had argued that if you go to trial you're going to be looking at in all probability getting habitualized based upon your record and the facts in this case and you'll probably be maxed out," and "[s]econd I had argued that if we go to trial and we lose, which I was very clear that I anticipated that happening, . . . that the second that jury comes back and says guilty you will be placed in custody on a no bail hold pending your sentencing." ECF No. 18-1 at 55.

Moreover, as the Supreme Court has stated, "[w]hen a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, our cases require that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S.Ct. 10, 13 (2013). Because the Nevada Court of Appeals' decision denying relief is reasonable and supported by the record, McDonald is not entitled to habeas relief on Ground 4.

d.  **Ground 5**

In Ground 5, McDonald alleges that his state court conviction was on insufficient

evidence. ECF No. 14 at 18-19. He asserts that the witnesses were not able to positively identify

McDonald as the person who took the wallet. *Id.* at 18. He further asserts that one of the

witnesses, Wright, only identified McDonald on the surveillance video from his physical stature

and body type, not his facial features. *Id.* The Nevada Supreme Court held:

> McDonald contends that the evidence presented at trial was insufficient to support the jury's finding of guilt because the victim did not identify him and another witness identified him by his build rather than his face. We disagree, and conclude that the evidence, when viewed in the light most favorable to the State, is sufficient to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *See Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also Wilkins v. State,* 96 Nev. 367, 374, 609 P.2d 309, 313 (1980).
>
> The jury heard testimony that the victim, Deborah Lee, purchased a money order and placed it into a long pink wallet. Lee testified that later, while shopping, she was distracted by a tall black man who then removed the wallet from her purse and fled the scene. Irva Baldwin testified that McDonald approached him shortly after the robbery and offered him $50 to cash a money order, the same order that Lee had purchased. The jury saw video footage from a security camera which showed a tall black man escaping the scene on foot with a pink wallet visibly on his person. McDonald was identified by a witness as the person in the video footage based upon his build and stature.
>
> The jury could reasonably infer from the evidence presented that McDonald committed the larceny and approached Baldwin to cash the money order on his behalf. Although McDonald contends that his face was never identified, it is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State,* 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also McNair v. State,* 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). Circumstantial evidence alone may sustain a conviction. *See Wilkins,* 96 Nev. at 374, 609 P.2d at 313. Because the jury made a reasonable determination, McDonald's first argument is without merit.

ECF No. 16-18 at 2. The Nevada Supreme Court's ruling was neither contrary to nor an

objectively unreasonable application of clearly established law as determined by the United

States Supreme Court.

When a habeas petitioner challenges the sufficiency of evidence to support his

conviction, the Court reviews the record to determine "whether, after viewing the evidence in

the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319

(1979) (emphasis in original). "[F]aced with a record of historical facts that supports conflicting inferences," the court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The reviewing court must respect the exclusive province of the fact-finder to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from proven facts. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996).  The Supreme Court has emphasized that claims of insufficiency of the evidence "face a high bar in federal habeas proceedings ...." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). When the deferential standards of AEDPA and *Jackson* are applied together, the question for decision on federal habeas review is whether the state court's decision unreasonably applied the *Jackson* standard to the evidence at trial. *See, e.g., Juan H. v. Allen*, 408 F.3d 1262, 1274–75 (9th Cir. 2005) (citations omitted).

As noted by the Nevada Supreme court, Lee testified at trial that after getting a money order, a tall black man approached her in a clothing store and took her wallet from her purse. Baldwin testified that on the same day that Lee's wallet was taken, McDonald offered him $50 to cash a money order that was Lee's money order. In addition, Baldwin identified McDonald in surveillance video taken at or near the scene. Another individual, Wright, identified McDonald to police officers as well as at trial.

Viewing the evidence in the light most favorable to prosecution, any rational trier of fact would have found the essential elements of larceny from a person, victim 60 years of age or older beyond a reasonable doubt. There was sufficient evidence identifying McDonald as the individual who took the victim's wallet. Based on a review of the record of evidence submitted at trial, the Court concludes that a rational jury could have found the essential elements of the crime beyond a reasonable doubt. McDonald is not entitled to habeas relief on Ground 5.

## IV.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to McDonald.  Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA").  Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a

COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

V.     **CONCLUSION**

It is therefore ordered that Petitioner Charles E. McDonald's amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 14) is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that the Clerk of the Court is directed to substitute William Hutchings for Respondent Brian Williams, enter judgment accordingly, and close this case.

DATED this 1st day of June, 2022.

_____
UNITED STATES DISTRICT JUDGE